1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSE ALFREDO SOTO

11            Petitioner,              No. CIV S-04-2122 MCE EFB P

12        vs.

13   D. ADAMS,

14            Respondent.             FINDINGS AND RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ

17   of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2002 judgment of

18   conviction entered against him in San Joaquin County Superior Court on two counts of forcible

19   rape and one count of forcible oral copulation, with findings that petitioner's acts involved

20   multiple victims; that during the commission of one of the rapes and the oral copulation

21   petitioner kidnapped the victim, used a deadly weapon, and bound the victim; and that during the

22   commission of the second rape petitioner used a deadly weapon.  Petitioner seeks relief on the

23   grounds that: (1) the evidence was insufficient to support his conviction on one of the rape

24   counts; (2) the trial court's admission into evidence of prior sex crimes committed by petitioner

25   violated his right to due process and equal protection; and (3) jury instruction error violated his

26   ////

1

right to due process.  Upon careful consideration of the record and the applicable law, the

undersigned recommends that petitioner's application for habeas corpus relief be denied.

**I.      Procedural and Factual Background**[1]

> A jury found defendant Jose Soto guilty of rape and forcible oral copulation of victim J.D., with special findings that he kidnapped, tied or bound the victim, and was armed with a knife during the commission of these crimes.  The jury also found Soto guilty of the rape of victim Q.D., with a special finding that he was armed with a knife.  Finally, the jury found that defendant committed a sex crime against separate victims within the meaning of Penal Code section 667.61, subdivision (b)(e)(5).

> After the court found a prior felony conviction to be true, defendant was sentenced to state prison for an aggregate term of 80 years to life under the three strikes law.  He appeals, challenging the sufficiency of the evidence to support one of the rape convictions and claiming instructional error and improper admission of prior sex crimes under Evidence Code section 1108.[2]  We will reject these arguments and affirm the judgment.

> * * *

> **Victim Q.D.**

> In November 1999, 22 year-old Q.D. was working at night as a prostitute in Stockton when defendant drove up and offered her $200 for a "date," to take place at defendant's house in Lathrop.  Q.D. agreed.

> They drove for about 45 minutes until they got to his house which was in the back of a small appliance store.  As soon as they walked in the door, defendant used a key to lock the dead bolt lock from the inside, which made Q.D. nervous.

> Once inside the bedroom, Q.D. asked for her money.  In response, defendant pulled out a knife with the blade exposed and ordered her to take her clothes off.

---

[1]  The following summary is drawn from the July 17, 2003 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pp. 1-5, filed in this court as Lodg. Doc. D, Ex. A.  This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).  Petitioner has not overcome the presumption with respect to the underlying events. The court will therefore rely on the state court's recitation of the facts.

[2]  All further statutory references are to the Evidence Code unless otherwise indicated.

Complying with defendant's instructions, Q.D. disrobed and got on the bed.  Defendant then took his pants off and had vaginal intercourse with Q.D. for about 30 minutes.  He then ordered her to roll over onto her stomach and penetrated her anally for 30 more minutes.

Q.D. told defendant she had to urinate, and she was allowed to go to the bathroom.  While she was in the bathroom, defendant asked if he could take pictures of her naked.  At that point, Q.D. broke open the bathroom window with a chair and started screaming for help.  A few seconds later, defendant opened the door with a shocked look on his face and told her to stop screaming.  She asked "Can I go?" and he replied "You can go, you can go."  Q.D. put on her pants and carried her jacket with her as she ran out to the street.  A neighbor found her distraught, frightened, naked from the waist up, yelling she had been raped, and that "He's got a knife."  The neighbor allowed Q.D. into her home, where she dialed 911.

Q.D. positively identified defendant from a photographic police lineup.  Sheriff's deputies searching defendant's house recovered a black folding knife, Polaroid film, rope, and duct tape from a dresser near his bed.

**Victim J.D.**

Around 4:00 a.m. on June 30, 2001, 22 year-old J.D. was picking up cigarette butts and disposing of them in a garbage canister outside her residence in Lathrop.  Defendant walked by and asked her for directions to a street called Warfield.  Because defendant seemed confused, J.D. led him down the street and was pointing out directions, when defendant grabbed her by the neck and pushed her up against a fence in a nearby driveway.  He tried unsuccessfully to rip off J.D.'s pants, then decided to push her toward a less conspicuous spot next to a church.  As he did this he held a knife to her throat and told her to "stop fucking around."

At defendant's direction, J.D. removed her clothes while he held the knife to her throat.  Defendant took J.D.'s shirt and tied it around her head, asking her if she could see anything.  J.D. replied she could not and assured him she was "positive," after he asked her again.

Defendant ordered her to spread her legs and penetrated her vaginally.  When he was finished, defendant forced her to orally copulate him for a short time.

Telling J.D. he had a "better idea," defendant then ordered J.D. to roll over on her hands and knees.  He put all his weight on top of her and stayed in that position for a couple of minutes, then suddenly got up and fled.

3

**Uncharged Misconduct**

Pursuant to section 1108 the prosecution was permitted to introduce two prior uncharged incidents of sexual misconduct committed by defendant on February 24, 1997.

Late that night defendant, who was then 25 years old, together with 14-year-old A.F., and a third person, robbed a BP gas station and convenience store in Lathrop. Wearing masks, the robbers ordered the store clerk, B.D., to the floor where they bound her arms, legs, eyes, and mouth with duct tape. After going through B.D.'s purse, defendant took out a knife, cut her sweater and bra open, sucked one of her breasts, and fondled the other.

Later that night A.F. and defendant met at a community center in a park to divide the stolen property. While at the park, defendant started kissing A.F. and grabbing her breasts. He pushed her down on the grass and tried to remove her clothes. Having managed to half undress A.F., defendant inserted his penis in her vagina, despite her pleas to get off her. A.F. escaped and began running. Defendant caught up with her and demanded oral sex. A.F. complied because she wanted to go home. At one point, defendant pulled out a buck knife and some rope, telling A.F. that if she got out of hand he would have to tie her up. A.F. played with the knife, but defendant quickly grabbed it away from her.

The jury was advised that in 1997, defendant pled guilty to "one count of lewd act with a child, fourteen or fifteen years of age, . . ." as well as robbery.

**Defense**

Defendant did not testify. His mother and father took the stand and gave testimony supporting the inference that their son did not leave their house the night of the attack on J.D.

Petitioner's judgment of conviction was affirmed by the California Court of Appeal in a reasoned decision dated July 17, 2003. Resp.'s Lodg. Doc. D, Ex. A. On August 27, 2003, petitioner filed a petition for review in the California Supreme Court, which was summarily denied by order dated October 1, 2003. Resp.'s Lodg. Docs. D, E.

**II. Analysis**

    **A. Standards for a Writ of Habeas Corpus**

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

4

1           (1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
2           determined by the Supreme Court of the United States; or

3           (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
4           State court proceeding.

5  28 U.S.C. § 2254(d).

6         Under section 2254(d)(1), a state court decision is "contrary to" clearly established

7  United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law

8  set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially

9  indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different

10  result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406

11  (2000)).

12         Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas

13  court may grant the writ if the state court identifies the correct governing legal principle from the

14  Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

15  case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because

16  that court concludes in its independent judgment that the relevant state-court decision applied

17  clearly established federal law erroneously or incorrectly. Rather, that application must also be

18  unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not

19  enough that a federal habeas court, in its independent review of the legal question, is left with a

20  'firm conviction' that the state court was 'erroneous.'")

21         The court looks to the last reasoned state court decision as the basis for the state court

22  judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a

23  decision on the merits but provides no reasoning to support its conclusion, a federal

24  habeas court independently reviews the record to determine whether habeas corpus relief is

25  available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

26  ////

**B. Petitioner's Claims**

**1. <u>Sufficiency of the Evidence</u>**

Petitioner's first claim is that the evidence introduced at his trial is insufficient to support his conviction for the rape of Q.D.  Attach. to July 25, 2005 Am. Pet. entitled "Amended Petition under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody and Pursuant to the United States District Court Order of June 2nd, 2005 " (hereinafter Am. Pet.), at 3-8. Petitioner's main argument is that there was insufficient evidence to support the requirement under state law that the crime was committed by means of fear.  *Id.* at 17, 20-21.  He explains, "The claim of fear was unreasonable, and it was not established beyond a reasonable doubt that petitioner took advantage of [Q's] unreasonable fear that she never expressed."  *Id.* at 8. Petitioner also states that Q.D. "never said don't hurt me or anything that would alert petitioner to her fear . . . petitioner was certainly unaware of her fear."  *Id.* at 18.  Petitioner argues that Q.D.'s statements to the neighbor to the effect that she was afraid of petitioner were fabricated and untrustworthy.  *Id.* at 21.  He contends that Q.D., who was a prostitute, "willingly went with petitioner and had sex with him for an agreed upon amount of $200.00."  *Id.* at 17.[3]

This claim was rejected by the California Court of Appeal in a written decision on petitioner's direct appeal, and by the California Supreme Court without comment on petition for review.  The California Court of Appeal explained its reasoning as follows:

**a. <u>Substantial Evidence of the Rape of Q.D.</u>**

> Defendant claims his conviction for the rape of Q.D. should be
> reversed for lack of sufficient evidence of force or fear.  His
> argument may be summarized as follows: Q.D. willingly

---

[3]  In connection with his argument on this claim, petitioner states that the prosecutor knowingly permitted Q.D. to give untruthful testimony to the effect that she was afraid and that petitioner raped her.  Am. Pet. at 20.  He also argues that the trial court improperly admitted hearsay evidence with no "indicia of reliability," in the form of the neighbor's testimony about statements made to her by Q.D.  *Id.*  By these allegations, petitioner may be attempting to raise a claim of prosecutorial misconduct and/or the improper admission of hearsay evidence by the trial court.  Any such "claim" is vague and conclusory, is not properly before the court, and is unexhausted in any event.  Accordingly, the court will not address these allegations.

accompanied him to his house for the express purpose of having sex; he never threatened her with the knife and put it away after displaying it; Q.D. never verbalized her fear of defendant, and apparently just "freaked" after he asked if he could take nude pictures of her while she was in the bathroom; and there was no indication defendant would not have paid her for her services.

Penal Code section 261, subdivision (a)(2), provides: "Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: [¶] . . . [¶] 2.  Where it is accomplished against a person's will by means of force . . . *or fear of immediate and unlawful bodily injury* on the person or another."  (Italics added.)

Upon a challenge to the sufficiency of the evidence of fear to support a verdict of rape, we ask "whether 'a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt.'"  (*People v. Johnson* (1980) 26 Cal.3d 557, 576 . . . .)  In making this determination, we "'must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'"  (*Ibid.*)"  (*People v. Iniguez* (1994) 7 Cal.4th 847, 854 (*Iniguez* ).)

The "fear" element of rape has two components, one subjective and the other objective.  "The subjective component asks whether a victim genuinely entertained a fear of immediate and unlawful bodily injury sufficient to induce her to submit to sexual intercourse against her will.  In order to satisfy this component, the extent or seriousness of the injury feared is immaterial. [Citations.] [¶]  In addition, the prosecution must satisfy the objective component, which asks whether the victim's fear was reasonable under the circumstances, or, if unreasonable, whether the perpetrator knew of the victim's subjective fear and took advantage of it.  [Citation.]"  (*Iniguez, supra*, 7 Cal.4th at pp. 856-857.)

Q.D.'s testimony satisfied both components of the fear element.  Although the initial arrangement between Q.D. and defendant was ostensibly "sex-for-money," it became clear as soon as they arrived at his house that defendant had used the agreement as a ruse to effectuate a rape: defendant dead bolted the door, essentially locking her inside; and when Q.D. asked for her money, defendant responded by brandishing an open knife and ordering her to take off her clothes.  It was not necessary for defendant to verbally threaten Q.D. with bodily injury to transform the encounter into a rape.  Defendant's display of an open-blade knife

spoke as loudly and forcefully as any words he could utter.[4]  A reasonable jury could find that Q.D. submitted because she was genuinely afraid for her safety.  The record also supports the inference that Q.D.'s fear was objectively reasonable, or if unreasonable, that defendant exploited it.

Contrary to defendant's suggestion, it was not necessary that Q.D. either express her fear of defendant or communicate that the sex was nonconsensual prior to the act.  "'Fear'" may be inferred from the circumstances despite even superficially contrary testimony of the victim." (*Iniguez, supra*, 7 Cal.4th at p. 857.)  Here, there was strong evidence that Q.D. feared defendant, as manifested by her behavior upon reaching the bathroom.

Moreover, the Legislature abolished the element of resistance as a prerequisite to rape in 1980.  (*Iniguez, supra*, 7 Cal.4th at pp. 855-856.)  Now, all that is required is that the jury find, in light of the totality of the circumstances, that the victim's compliance with defendant's insistence on sexual intercourse "was induced either by force, fear, or both, and, in any case, fell short of a consensual act." (*People v. Barnes* (1986) 42 Cal.3d 284, 305 (*Barnes* ).)  Defendant's position would "effectively guarantee[ ] an attacker freedom to intimidate his victim and exploit any resulting reasonable fear so long as she neither struggles nor cries out," a result rejected by the California Supreme Court.  (*Iniguez, supra*, 7 Cal.4th at p. 858.)  Defendant's substantial evidence claim must be rejected.

Opinion at 5-8.

There is sufficient evidence to support a conviction if, " after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  A petitioner in a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262,

---

[4]  Defendant misrepresents the record in asserting that defendant "put the knife away" after brandishing it.  Q.D. testified merely that after defendant took the knife out, she did not know what he did with it but believed he set it by his bed.

1274, 1275 & n.13 (9th Cir. 2005).  In order to grant the writ, the habeas court must find that the

decision of the state court reflected an objectively unreasonable application of *Jackson* and

*Winship* to the facts of the case.  *Id.*

       The court must review the entire record when the sufficiency of the evidence is

challenged in habeas proceedings.  *Adamson v. Ricketts*, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

*vacated on other grounds*, 789 F.2d 722 (9th Cir. 1986) (en banc), *rev'd*, 483 U.S. 1 (1987).  It is

the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  If the trier

of fact could draw conflicting inferences from the evidence, the court in its review will assign

the inference that favors conviction.  *Turner v. Calderon*, 281 F.3d 851, 881-82 (9th Cir. 2002).

The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but

whether the jury could reasonably arrive at its verdict.  *United States v. Mares*, 940 F.2d 455,

458 (9th Cir. 1991).  The federal habeas court determines the sufficiency of the evidence in

reference to the substantive elements of the criminal offense as defined by state law.  *Jackson*,

443 U.S. at 324 n.16; *Chein*, 373 F.3d at 983.

       Viewing the evidence in the light most favorable to the verdict, and for the reasons

expressed by the state appellate court, there was sufficient evidence from which a rational trier of

fact could have found beyond a reasonable doubt that petitioner was guilty of raping Q.D.  As

explained by the state appellate court, the evidence introduced at petitioner's trial was sufficient

for a rational juror to conclude that the "act of sexual intercourse" between petitioner and Q.D.

was accomplished against Q.D.'s will by force or "fear of immediate and unlawful bodily

injury," as required by Cal. Penal Code § 261.  Q.D.'s actions, even prior to her statements to the

neighbor, were sufficient for a rational juror to conclude that she was afraid.  This fear was

justified by petitioner's actions in locking his bedroom door, producing a knife, and telling Q.D.

to take off her clothes after she asked him for payment.  The conclusion of the state court that

sufficient evidence supported petitioner's conviction of the rape of Q.D. is not contrary or an

1    unreasonable application of United States Supreme Court authority.  Accordingly, petitioner is

2    not entitled to relief on this claim.

3                        **2.   Admission of Evidence**

4          Petitioner's next claim is that the trial court violated his Fourteenth Amendment rights to

5    due process and equal protection when it admitted into evidence his acts against B.D. (the store

6    clerk) and A.F. (his accomplice in the store burglary) to show his propensity to commit sex

7    offenses.  Am. Pet. at 8-12, 21-31.

8          Petitioner first argues that A.F.'s testimony was inconsistent and not credible.  *Id.*  He

9    argues that the incident involving A.F. was not similar to the offenses for which he was

10   convicted in this case and was "remote in time," and that the admission of evidence about the

11   incident was "more prejudicial rather than probative."  *Id.* at 10, 24.  He specifically complains

12   that he was convicted of lewd acts with a minor in the case of A.F., whereas the instant

13   conviction involved charges of rape.  *Id.* at 22-23.  Petitioner contends that the prosecutor

14   discussed the evidence regarding petitioner's acts with A.F. "intensely in his closing arguments

15   in order to get the jury to focus on it."  *Id.* at 12.  He also notes that the jury asked for

16   clarification regarding "who were the victims for the multiple victims enhancement."  *Id.*  He

17   argues that "where the jurors were confused and uncertain as to who the victims are, then it is

18   inherently reasonably possible that they are also confused as to what facts and elements belong

19   to what alleged crime."  *Id.* at 30.[5]  Citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000),

20   petitioner argues that the admission of this evidence violated his right to a jury trial because the

21   prosecutor essentially "re-characterized" his offense against A.F. as a rape, when he did not

22   plead guilty to a rape.  *Id.* at 23-24.

23

24          [5]  Petitioner's jury asked the following question:  "Jurors all have questions concerning
      one of the findings in count three – defendant committed a forcible sex crime against <u>two</u>
25   <u>separate victims</u>.  Besides Ms. Davis who is the other victim?"  Clerk's Transcript on Appeal
      (CT) at 137.  The jurors were advised that the only people who were considered to be victims for
26   purposes of the finding regarding "multiple victims" were Q.D. and J.D.  *Id.* at 138.

                        10

Petitioner also argues that the trial court erroneously admitted evidence of his actions against B.D., the store clerk, even though "this incident was nothing like the instant offense" and was "remote." *Id.* at 10, 26, 29.  It appears that petitioner's due process claim with regard to B.D. is unexhausted.  Lodg. Doc. A.  Nonetheless, assuming it is unexhausted the court recommends that it be denied on the merits for the reasons expressed below.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Petitioner claims that the admission of the above-described propensity evidence was harmless because the case against him was "not very strong."  Am. Pet. at 28.  He states:

> petitioner was charged with rape of a prostitute that occurred three
> years prior to trial where the evidence of guilt was particularly
> weak and remote, and the sexual assault where he was identified
> by a woman who only observed her assailant for a brief time in the
> dark while under the influence of drugs.  Petitioner had an iron
> clad alibi and still counsel was unable to deflect the prejudicial
> effect of the prior act propensity evidence unfairly had in this case.

*Id.*

### a. State Court Decision

The California Court of Appeal denied these claims, reasoning as follows:

### Admission of Prior Sex Crimes Under Section 1108

> In limine and prior to trial, defendant sought to exclude the
> testimony of A.F. that defendant raped and forced her to orally
> copulate him following the gas station robbery in which they both
> participated.  Counsel argued that the incident was more
> prejudicial than probative because: (1) A.F. was a minor; (2)
> defendant was never convicted of rape, but rather a lewd act on a
> minor; (3) admission of the incident would take up an inordinate
> amount of time since defendant claimed the encounter was
> consensual; and (4) the crimes were dissimilar, since defendant
> and the victim knew each other, unlike the charged offenses.

> While conceding that the sexual assault on A.F. created some
> potential prejudice in that it involved a minor who was 10 years
> defendant's junior and an acquaintance, the trial court decided to
> admit the evidence under section 1108.  The judge noted that the

sequence of sexual acts was the same as in the Q.D. charges, and A.F .'s testimony tended to corroborate the credibility of both

victims in the present case.  Defendant claims this ruling was prejudicial error.

In a prosecution for a sexual offense, section 1108 permits evidence of the commission of another sexual offense provided that it is not inadmissible under section 352 (prejudicial effect of the evidence outweighs its probative value).  "By reason of section 1108, trial courts may no longer deem 'propensity' evidence unduly prejudicial per se, but must engage in a careful weighing process under section 352.  Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*People v. Falsetta* (1999) 21 Cal.4th 903, 916-917.)

We will not disturb a trial court's exercise of discretion under section 352 unless it is shown the trial court exercised it """in an arbitrary, capricious or patently absurd manner."''  (*People v. Frye* (1998) 18 Cal.4th 894, 948; *accord, People v. Sanders* (1995) 11 Cal.4th 475, 512.)

The court's ruling admitting the A.F. incident was not an abuse of discretion.  The episode was clearly relevant to both victims in the present case, in that it tended to show defendant's propensity for obtaining sexual gratification from young females by force and intimidation.  Significantly, both the A.F. incident and the incident involving Q.D. started out as innocuous encounters which escalated into forcible sex.  In all three cases, defendant brandished a knife as a means of intimidating his victim.  In the case of A.F. as with J.D., defendant first raped the victim and then immediately demanded the victim orally copulate him.

While defendant correctly points out there were some dissimilarities between the A.F. incident and the charged offenses, section 1108, unlike section 1101, subdivision (b), contains no predicate requirement that there be an unusually high degree of similarity.  As the court noted in *People v. Soto* (1998) 64 Cal.App.4th 966, the Legislature deliberately chose not to add a similarity requirement to section 1108 because doing so would tend to reintroduce the strictures of prior law which the statute was designed to overcome "and could often prevent the admission and

consideration of evidence of other sexual offenses in circumstances where it is rationally probative.  Many sex offenders are not 'specialists', and commit a variety of offenses which differ in specific character."  (*Id.* at p. 984, quoting *Historical Note*, 29B pt. 3, West's Ann. Evid.Code, (1998 pocket supp.) foll. § 1108, pp. 31-32.)

Finally, defendant contends that the ruling was an abuse of discretion because: (1) he disputed the claim of forced sex with A.F. and "consented to sex is not probative" of violent sexual offenses; and (2) the district attorney in A.F.'s case allowed him to plead guilty to a lesser charge of unlawful sex with a minor.  Neither point has merit.

Defendant's claim of consent with respect to A.F. does not militate in favor of exclusion.  Quite to the contrary: defendant also claimed consent with respect to Q.D.'s accusation of rape.  A.F.'s testimony tended to undermine that claim and support the truthfulness of Q.D.'s testimony.  (*See People v. Fitch* (1997) 55 Cal.App.4th 172, 182 ["The Legislature has determined the need for this evidence is 'critical' given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial"].)

Nor did the fact that defendant pled guilty to a lesser offense of having sex with A.F. as a minor tip the scales in favor of exclusion. To be admissible under section 1108, it is not necessary that any conviction result from the prior sexual misconduct.  A fortiori, the fact that the accused pleads guilty to a lesser offense than that described by the victim is of little moment.

Clearly, perpetrating a lewd act on a 14- or 15-year-old female is a serious offense.  If anything, the fact that defendant pled to a less serious offense reduced the prejudicial effect of the evidence, since it tended to soften the impact of A.F.'s rape allegation.  In any event, the trial court did not abuse its discretion in allowing the jury to weigh the incident for whatever light it shed on the charges involving J.D. and Q.D.

Opinion at 10-13.

### b.  Analysis of Due Process Claims

The question whether evidence of prior uncharged acts was properly admitted under California law is not cognizable in this federal habeas corpus proceeding.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  The only question before this court is whether the trial court committed an error that rendered the trial so arbitrary and fundamentally unfair that it violated federal due process.  *Id.  See also Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("the issue for

13

1    us, always, is whether the state proceedings satisfied due process; the presence or absence of a

2    state law violation is largely beside the point").

3          The United States Supreme Court "has never expressly held that it violates due process to

4    admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that

5    it violates due process to admit other crimes evidence for other purposes without an instruction

6    limiting the jury's consideration of the evidence to such purposes."  *Garceau v. Woodford*, 275

7    F.3d 769, 774 (9th Cir. 2001), *overruled on other grounds* by *Woodford v. Garceau*, 538 U.S.

8    202 (2003).  In fact, the Supreme Court has expressly left open this question.  *See Estelle v.*

9    *Mcguire*, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on

10   whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes'

11   evidence to show propensity to commit a charged crime").  *See also Mejia v. Garcia*, 534 F.3d

12   1036, 1046 (9th Cir. 2008) (holding that state court had not acted objectively unreasonably in

13   determining that the propensity evidence introduced against the defendant did not violate his

14   right to due process); *Alberni v. McDaniel*, 458 F.3d 860, 863-67 (9th Cir. 2006), *cert. denied*,

15   549 U.S. 1287 (2007) (denying the petitioner's claim that the introduction of propensity

16   evidence violated his due process rights under the Fourteenth Amendment because "the right

17   [petitioner] asserts has not been clearly established by the Supreme Court, as required by

18   AEDPA"); *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001) (Fed. R. Evid. 414, permitting

19   admission of evidence of similar crimes in child molestation cases, under which the test for

20   balancing probative value and prejudicial effect remains applicable, does not violate the due

21   process clause).  Accordingly, the state court's rejection of petitioner's due process claim is not

22   contrary to United States Supreme Court precedent.

23          Further, any error in admitting this testimony did not have "a substantial and injurious

24   effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637

25   (1993).  *See also Penry v. Johnson*, 532 U.S. 782, 793-96 (2001).  The record reflects that the

26   state trial judge struck an appropriate balance between petitioner's rights and the clear intent of

14

1   the California legislature that evidence of prior similar acts be admitted in sexual offense

2   prosecutions.  The trial court held a hearing on petitioner's pre-trial in limine motion to exclude

3   evidence of petitioner's uncharged acts involving A.F. and B.D. and concluded that the

4   challenged evidence was relevant, appropriate, and allowed by California law.  Reporter's

5   Transcript on Appeal (RT) at 15-39.  Further, the jury instructions did not compel the jury to

6   draw an inference of propensity – they simply allowed it.  The trial court instructed the jury at

7   the close of the evidence that if they found petitioner had committed the prior sexual offenses

8   they could, but were not required to, infer that he had a disposition to commit sexual offenses.

9   *Id.* at 1104.  The jury was also instructed that if they found that petitioner had such a disposition,

10  they could, but were not required to, infer that he was likely to have committed the charged

11  offenses.  *Id.*  The jury was directed that it should not consider petitioner's prior conduct, or

12  evidence thereof, as proof that petitioner committed the crimes charged in the information.  *Id.*

13  In addition, the jury instructions as a whole correctly informed petitioner's jury that the

14  prosecution had the burden of proving all elements of the crimes against petitioner beyond a

15  reasonable doubt.  *Id.* at 1085, 1092.  The jury is presumed to have followed all of these

16  instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Brown v. Ornoski*, 503 F.3d 1006,

17  1018 (9th Cir. 2007).[6]

18      The admission of petitioner's prior acts of sexual misconduct did not violate any right

19  clearly established by United States Supreme Court precedent or result in prejudice under the

20  circumstances of this case.  Accordingly, petitioner is not entitled to relief on his due process

21  claim.

22  *////*

23

24      [6]  The Ninth Circuit has observed that "[n]othing in the text of § 1108 suggests that the
    admissible propensity evidence would be sufficient, by itself, to convict a person of any crime.

25  Section 1108 relates to admissibility, not sufficiency."  *Schroeder v. Tilton*, 493 F.3d 1083, 1088
    (9th Cir. 2007) (admission of evidence of defendant's prior sex crimes did not violate Ex Post

26  Facto Clause).

1      **c. Analysis of Equal Protection Claim**

2           Petitioner has also failed to demonstrate that the admission of his prior acts of sexual

3      misconduct pursuant to California Evidence Code § 1108 violated his rights under the Equal

4      Protection Clause.  In *LeMay*, the Ninth Circuit held that Federal Rule of Evidence 414 did not

5      violate the Equal Protection Clause because it did not discriminate against any group of

6      individuals on the basis of a suspect or quasi-suspect class and did not infringe on a fundamental

7      right.  260 F.3d at 1030 (defendants have " no fundamental right to have a trial free from

8      relevant propensity evidence that is not unduly prejudicial " ).  Thus, the rule was constitutional

9      so long as it bore a " reasonable relationship to a legitimate government interest."  *Id*. at 1031.

10     The court observed that Rule 414 allowed prosecutors to introduce relevant evidence in

11     furtherance of the legitimate government interest of prosecuting and convicting sex offenders.

12     *Id.*  On this basis the court found the equal protection challenge to Rule 414 to be without merit.

13     *Id.*

14          As in *LeMay*, the class of sex offenders is not a suspect class triggering strict scrutiny

15     here.  Further, California Evidence Code § 1108 does not infringe on a fundamental right

16     because petitioner has no fundamental right to a trial free from relevant propensity evidence that

17     is not unduly prejudicial.  *See LeMay*, 260 F.3d at 1030.  Thus, the provision need only satisfy

18     rational bases review.  Section 1108 bears a reasonable relationship to the legitimate government

19     interest in the effective prosecution of rape cases.  *See id.* at 1031.

20          Petitioner has not demonstrated that the state court decision rejecting his equal protection

21     challenge to § 1108 was contrary to or an unreasonable application of federal law.  Accordingly,

22     petitioner is not entitled to habeas relief on that claim.

23               **3. Jury Instruction Error**

24          Petitioner claims that one of the jury instructions given at his trial allowed him to be

25     convicted on lesser proof than beyond a reasonable doubt.  The California Court of Appeal

26     rejected this claim, reasoning as follows:

16

1

**Giving the 1999 Revision of CALJIC No. 2.50.01**

2

The trial court gave the post-1999 revision of CALJIC No.
2.50.01, which states in relevant part: "If you find that the
3
defendant committed a prior sexual offense, you may, but are not
required to, infer that the defendant had a disposition to commit
4
sexual offenses.  If you find that the defendant had this disposition,
you may, but are not required to, infer that [he][she] was likely to
5
commit and did commit the crime [or crimes] of which [he][she] is
accused.  [¶]  However, if you find by a preponderance of the
6
evidence that the defendant committed [a] prior sexual offense[s],
that is not sufficient by itself to prove beyond a reasonable doubt
7
that [he][she] committed the charged crime[s].  If you determine an
inference properly can be drawn from this evidence, this inference
8
is simply one item for you to consider, along with all other
evidence, in determining whether the defendant has been proved
9
guilty beyond a reasonable doubt of the charged crimes.  [¶]
Unless you are otherwise instructed, y[Y]ou must not consider this
10
evidence for any other purpose.]"

11

Defendant contends the trial court erred and deprived him of due
process of law in giving this instruction since he contends it
12
impermissibly lessens the burden of the prosecution to prove him
guilty beyond a reasonable doubt.

13

This claim has recently been rejected by the California Supreme
14
Court.  In *People v. Reliford* (2003) 29 Cal.4th 1007, the state high
court held that "the 1999 version of CALJIC No. 2.50.01 correctly
15
states the law."  (*Id.* at p. 1009.)  In so holding, the court
essentially rejected all the arguments raised by defendant here.
16
(*Id.* at pp. 1012-1016.)

17

In his reply brief, defendant acknowledges that *Reliford* disposes
of his argument and that this court is bound to follow the Supreme
18
Court's command under *Auto Equity Sales, Inc. v. Superior Court*
(1962) 57 Cal.2d 450, 455.

19

20  Opinion at 13-15.

21          Due process " requires the prosecution to prove every element charged in a criminal

22  offense beyond a reasonable doubt." *Gibson v. Ortiz*, 387 F.3d 812, 820 (9th Cir.2004),

23  *overruled on other grounds* by *Byrd v. Lewis,* 566 F.3d 855, 866 (9th Cir. 2009) (citing *In re*

24  *Winship*, 397 U.S. 358, 364 (1970)).  If the jury is not properly instructed concerning the

25  presumption of innocence until proven guilty beyond a reasonable doubt, a denial of due process

26  results. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (*per curiam*).  "Any jury instruction

that 'reduce[s] the level of proof necessary for the Government to carry its burden . . . is plainly inconsistent with the constitutionally rooted presumption of innocence.'" *Gibson*, 387 F.3d at 820 (alterations in original) (quoting *Cool v. United States*, 409 U.S. 100, 104 (1972) (per curiam)).

In *Gibson*, the Court of Appeals for the Ninth Circuit held that the 1996 version of CALJIC No. 2.50.01 and CALJIC No. 2.50.1, when given together at a criminal trial, violate the defendant's Fourteenth Amendment due process rights to be proven guilty beyond a reasonable doubt because they allow a jury to: (1) find that a defendant had committed prior sexual offenses by a preponderance of the evidence; (2) infer from those past offenses a predilection for committing sexual offenses; and (3) further infer guilt of the charged offense based on those predilections.  387 F.3d at 820.  CALJIC No. 2.50.01 was amended in 1999 to clarify how jurors should evaluate a defendant's guilt relating to the charged offense if they found that he had committed a prior sexual offense.  That revision added the following language: "However, if you find by a preponderance of the evidence that the defendant committed prior sexual offenses, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes."  CALJIC No. 2.50.01 (7th ed. 1999).  The instruction also provided that "[t]he weight and significance of the evidence, if any, are for you to decide."  *Id.*  In 2002, CALJIC No. 2.50.01 was revised again.  The 2002 revision deleted the sentence "[t]he weight and significance of the evidence, if any, are for you to decide," and inserted the following statement: "If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime."  CALJIC No. 2.50.01.  In *People v. Reliford*, 29 Cal.4th 1007, 1016 (2003), the California Supreme Court upheld the constitutionality of the 1999 version of CALJIC No. 2.50.01, but commented that it had been "improved" by the addition of the sentence in the 2002 amendment.

////

1    As described by the California Court of Appeal, the trial court gave the post-1999

2    revision of CALJIC No. 2.50.01 to petitioner's jury.  Challenges to the constitutionality of the

3    1999 and 2002 versions of CALJIC No. 2.50.01 have been rejected by numerous federal courts

4    in unpublished opinions.  *See e.g. Abel v. Sullivan*, No. 08-55612, 2009 WL 1220761, *3 (9th

5    Cir. 2009) (2002 version); *Smith v. Ryan*, 220 Fed. Appx. 563, **3 (9th Cir. 2007) (1999

6    version); *McGee v. Knowles*, 218 Fed. Appx. 584, **1 (9th Cir. 2007); *Turner v. Adams*, No. C

7    07-6258 MHP (PR), 2010 WL 702268, *21 (N.D. Cal., February 25, 2010) (2002 version); *Cata*

8    *v. Garcia*, No. C 03-3096 PJH (PR), 2007 WL 2255224, *15-16 (N.D. Cal., Aug. 3, 2007) (1999

9    version); *Perez v. Duncan*, 2005 WL 2290311 (N.D. Cal., Sept. 20, 2005) (1999 version).  Based

10   on the reasoning of the above-cited opinions, this court concludes that the decision of the state

11   court rejecting petitioner's jury instruction claim is not contrary to or an unreasonable

12   determination of United States Supreme Court authority.  Accordingly, petitioner is not entitled

13   to relief on this claim.

14   **III.  Conclusion**

15   For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

16   application for a writ of habeas corpus be denied.

17   These findings and recommendations are submitted to the United States District Judge

18   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one

19   days after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties.  Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

22   within the specified time may waive the right to appeal the District Court's order. *Turner v.*

23   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

24   his objections petitioner may address whether a certificate of appealability should issue in the

25   event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

26   ////

1    Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

2    enters a final order adverse to the applicant).

3    DATED:  March 29, 2010.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE